**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DENISE M. INKROTE,**

        Plaintiff,

v.                                                                                       **Civil Action No. 3:09-CV-51
(BAILEY)**

**PROTECTION STRATEGIES
INCORPORATED, a foreign corporation,
DANIELLE MALO, and WANDA DALLING,
individually,**

        Defendants.

### ORDER REMANDING CASE FOR LACK OF
### SUBJECT MATTER JURISDICTION

Currently pending before the Court is Defendants Protection Strategies, Inc.'s, Danielle Malo's, and Wanda Dalling's Motion to Dismiss [Doc. 8], filed August 24, 2009. Plaintiff responded on September 15, 2009 [Doc. 14], and Defendants replied on September 18, 2009 [Doc. 17]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, finds, *sua sponte*, that it lacks subject matter jurisdiction to decide the motion or any other matter with regard to this case. Therefore, the Court **REMANDS** this matter to the Circuit Court of Berkeley County.

### BACKGROUND

Plaintiff Denise Inkrote is a former employee of Defendant Protection Strategies, Inc. ("PSI"), which at one time during the plaintiff's employment held a prime contract with the United States Coast Guard to process applications for maritime licensing. ([Doc. 19] at 2). However, during the time pertinent to this case, PSI acted as a subcontractor to Security

1

Assistance Corporation ("SAC"), which held the prime contract with the Coast Guard. (Id. at 2-3). The other two defendants named in this action, Danielle Malo ("Malo") and Wanda Dalling ("Dalling"), were supervisors of Plaintiff and other PSI employees, (See [Doc. 3-2] at 3, ¶ 7), though the defendants argue that Malo and Dalling were, at the relevant time, technically employed by SAC. (See [Doc. 19] at 3).

Pursuant to the subcontract, PSI evaluates applications for maritime licensing. (Id. at 2). The plaintiff, as a Screener/Investigator, performed background checks with regard to these applicants. (Id.). While performing this task for PSI, the plaintiff alleges she was discriminated against and received adverse employment action due to a disability and her sex. ([Doc. 3-2] at 4-6). In support of her claim of disability discrimination, the plaintiff alleges that, "[f]ollowing her return from maternity leave, Defendants collectively engaged in a pattern of harassment toward [her], resulting in emotional and physical distress." (Id. at 3, ¶ 11). With regard to her claim of sex discrimination, the plaintiff alleges that the defendants promoted a less qualified male employee over her, provided him with additional training, and failed to provide that training to her upon request. (Id. at 4, ¶¶ 16-18).

In addition, the plaintiff claims that she was not paid in accordance with the West Virginia Minimum Wage and Hours Law or the West Virginia Wage Payment and Collection Act. (Id. at 6, ¶¶ 34, 35). In support of these claims, the plaintiff alleges that she was required to work over forty hours without overtime pay, work for which she has still not been compensated. ([Doc. 14] at 5).

Moreover, the plaintiff claims that upon informing the defendants that she planned to contact the West Virginia Division of Labor and the West Virginia Human Rights Commission regarding the overtime requirement and adverse treatment at her workplace,

the defendants terminated her employment in retaliation. ([Doc. 3-2] at 4, ¶¶ 12-15). Specifically, the plaintiff alleges that Defendant Malo first "reprimanded [her] and threatened to terminate her employment." (Id. at 4, ¶ 13). Next, the plaintiff began to experience "physical symptoms of anxiety" for which she sought medical treatment. However, while en route to the doctor, the plaintiff received a phone call from Defendant Malo who then terminated her employment. (Id. at 4, ¶¶ 14-15). Finally, as a result of this and other adverse treatment, the plaintiff claims she suffered "extreme emotional distress with physical manifestations." (Id. at 7, ¶¶ 36-37).

On June 18, 2009, Ms. Inkrote instituted this action in the Circuit Court of Berkeley County, West Virginia. The Complaint [Doc. 3-2] includes five counts: (1) disability discrimination, (2) sex discrimination, (3) wrongful/retaliatory discharge, (4) violations of the West Virginia Minimum Wage and Maximum Hours Law and the West Virginia Wage Payment and Collection Act, and (5) intentional infliction of emotional distress.

On July 22, 2009, the defendants removed the case based upon diversity and federal question jurisdiction. Specifically, with regard to diversity jurisdiction, the defendants argued that Defendant Malo had been fraudulently joined and, as a result, her citizenship should be disregarded. ([Doc. 3] at 2-3). As for federal question jurisdiction, the defendants argued that the plaintiff's claims are preempted by federal law and implicate federal interests and objectives. (Id. at 4).

On August 24, 2009, the defendants filed a Motion to Dismiss [Doc. 8], arguing that "[t]he Plaintiff's Complaint fails to allege sufficient facts to establish any cause of action against any of the Defendants" and that "the claims against the individual defendants fail as a matter of law, because the individuals are not among the class of defendants who are

3

subject to liability on the claims asserted." ([Doc. 8] at 2, ¶ 3). Plaintiff responded on September 15, 2009 [Doc. 14], and Defendants replied on September 18, 2009 [Doc. 17]. Subsequently, however, this Court, *sua sponte*, discovered defects in subject matter jurisdiction and, on September 16, 2009, ordered further briefing on this issue. Finally, on October 6, 2009, the defendants filed their Brief to Show Cause Why the Court Should not Remand this Matter for Lack of Subject-Matter Jurisdiction [Doc. 19], expanding upon its previous arguments with regard to diversity and federal question jurisdiction. As of the date of this Order, the plaintiff had yet to file a responsive brief.[1]

## DISCUSSION

**I.** **Standard**

Defendants in civil actions may remove a matter from state to federal court if the latter forum has original subject matter jurisdiction. This requirement can be based upon diversity jurisdiction or federal question jurisdiction. 28 U.S.C. § 1441. A federal district court has diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332. Further, a federal district court has federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. This particular jurisdiction must inhere in the plaintiff's claim, rather than be based on a defense or counterclaim. **Louisville & Nashville R.R. v. Mottley**, 211 U.S. 149 (1908).

---

[1]The sole purpose of this statement is to ensure a complete record. Plaintiff was by no means required to file a responsive pleading and had until October 16, 2009 to do so.

4

The burden of demonstrating jurisdiction generally resides with the defendant. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). Likewise, the plaintiff's role in the context of disputes about removability is also clearly defined: the plaintiff is the master of his or her claim. See *Oklahoma Tax Com'n v. Graham*, 489 U.S. 838 (1989). This means that, "if [the plaintiff] chooses not to assert a federal claim . . . or properly joins a nondiverse party, defendants cannot remove the action to federal court on the ground that an alternative course of conduct available to the plaintiff would have permitted removal of the case." 14B Charles Wright, *Federal Practice and Procedure*, §3721, p. 59 (2009). Moreover, as the Fourth Circuit has indicated, if federal jurisdiction is doubtful, the case must be remanded. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Finally, as previously stated in the Court's Order to Show Cause, a district court may raise, *sua sponte*, the question of subject matter jurisdiction. See *Brickwood Contrs., Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (noting that "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court"); *Wickline v. Dutch Run-Mays Draft, LLC*, 606 F.Supp.2d 633, 636 (S.D. W.Va. 2009) (same).

II. **Analysis**

    A. **Diversity Jurisdiction**

In recognizing that complete diversity of citizenship is lacking on the face of the Complaint, the defendants argue that "the Court should disregard Ms. Malo's West Virginia citizenship because she was fraudulently joined in this matter." ([Doc. 19] at 5). However, the Court finds no fraudulent joinder in this case, and thus, may not disregard the

citizenship of Defendant Malo.  Therefore, the Court lacks diversity jurisdiction.

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and all the plaintiffs are citizens of different states than each defendant.  **Lincoln Property Co. v. Roche**, 546 U.S. 81, 84 (2005).  Typically, diversity jurisdiction is determined from "the face of the plaintiff's well-pled complaint."  **Ashworth v. Albers Medical Inc.**, 395 F.Supp.2d 395, 402 (S.D. W.Va. 2005).  An exception to this well-pled complaint rule is the doctrine of fraudulent joinder.  In the context of diversity jurisdiction, this exception allows a court to disregard the citizenship of certain parties.  In asserting fraudulent joinder, a defendant seeking removal argues that other defendants were improperly joined because either there is no possible successful cause of action against those defendants or the complaint pled fraudulent facts.  *See* **Wyatt v. Charleston Area Med. Ctr., Inc.**, No. 2:09-cv-00685, 2009 U.S. Dist. LEXIS 61985 (S.D. W.Va. July 20, 2009) (citing **Ashworth**, 395 F.Supp.2d at 403).  In elaborating upon these requirements, the **Ashworth** court stated that:

> The burden of demonstrating fraudulent joinder is heavy.  The defendants must show that plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor. Moreover, a claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.  The standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and, indeed, if the plaintiff demonstrates even a glimmer of hope for relief, the jurisdictional inquiry must end.  Nonetheless, a finding of fraudulent joinder is warranted when the record before the court demonstrates either that no cause of action is stated against the non-diverse defendant, or in fact no cause of action exists.  In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming.

**Ashworth**, 395 F.Supp.2d at 403 (internal citations and quotations omitted).

Finally, the Fourth Circuit has held in the context of fraudulent joinder that "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." ***Mayes v. Rapoport***, 198 F.3d 457, 464 (4th Cir. 1999).

Here, there are no allegations of outright fraud in the pleading of jurisdictional facts. Thus, the Court's inquiry is limited to whether the plaintiff conceivably may state a claim against Defendant Malo under West Virginia law based on the allegations of her Complaint. In particular, the plaintiff alleges five claims against Defendant Malo: disability discrimination (Count I), sex discrimination (Count II), wrongful discharge and retaliation (Count III), violations of the West Virginia Wage Payment laws (Count IV), and intentional infliction of emotional distress ("IIED") (Count V). For fraudulent joinder to exist, none of these claims can have a "possibility" or "glimmer of hope" for relief. In considering the entire record, the Court finds that at least one does.

With regard to Counts I, II, and IV, the defendants argue that Defendant Malo cannot be held liable pursuant to these claims because she should not be considered an employer of the plaintiff as defined by state statute. In support of this argument, the defendants claim that Defendant Malo was technically employed by SAC, the prime contractor, as opposed to PSI, a subcontractor of SAC. (See [Doc. 19] at 7-8). As for Count V, the IIED claim, the defendants argue that it should fail because "the conduct being alleged clearly did not and cannot rise to the level of outrageousness necessary to maintain such a claim." (Id. at 9).

However, even assuming the defendants are correct with regard to Counts I, II, IV, and V, the Court finds that Count III, the wrongful discharge claim, satisfies the relatively

low "possibility of success" standard.[2] In reference to Count III, the defendants argue that, "[e]ven taking the Plaintiff's contention that she was terminated because she contacted various state agencies as true, this alone would not be in contravention of an explicit substantial public policy necessary to maintain a wrongful discharge claim." (Id.). This Court disagrees.

Under West Virginia law, a plaintiff may maintain a cause of action for wrongful (or retaliatory) discharge if the motivation for the discharge contravenes a substantial public policy. **Feliciano v. 7-Eleven, Inc.**, 210 W.Va. 740, 745, 559 S.E.2d 713, 718 (2001). "To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." **Birthisel v. Tri-Cities Health Servs. Corp.**, 188 W.Va. 371, 377, 424 S.E.2d 606, 612 (1992). Finally, to be considered substantial, "a public policy must not just be recognizable as such but must be so widely regarded as to be evident to employers and employees alike." **Feliciano**, 559 S.E.2d at 718.

In the Complaint, the plaintiff alleges that the day after learning she planned to contact the West Virginia Division of Labor and the West Virginia Human Rights Commission regarding overtime requirements and adverse treatment at her workplace, Defendant Malo terminated the plaintiff's employment. (See [Doc. 3-2] at 3-4, ¶¶ 12-15).

---

[2]However, the Court states as an alternative finding that Counts I and II under the West Virginia Human Rights Act also have a possibility of success against Defendant Malo as a "person" as defined by the Act. *See* W.Va. Code § 5-11-9(7); **Holstein v. Norandex, Inc.** 194 W.Va. 727, 730-31, 461 S.E.2d 473, 476-77 (1995) (recognizing that a supervisor is a "person" who can be held liable for aiding and abetting an unlawful discriminatory act).

In their Memorandum in Support of Defendants' Motion to Dismiss [Doc. 9], the defendants recognize that "it is in contravention of substantial public policy for an employer to discharge an employee for seeking access to courts by filing an action, pursuant to state statute, for overtime wages[,]" yet, without explanation, declare the plaintiff's allegation distinguishable. ([Doc. 9] at 9). The Court fails to see a distinction, as would a reasonable employer[3], between firing an employee for seeking administrative relief as opposed to judicial relief.

Therefore, resolving all issues of fact as presented by the entire record in favor of the plaintiff, the Court finds that the wrongful discharge claim has at least a possibility for relief. As a result, the Court finds that the defendants have failed to meet their heavy burden required to establish fraudulent joinder. Accordingly, because Defendant Malo's citizenship should not be disregarded, the Court may not base subject matter jurisdiction upon complete diversity of citizenship.

## B. Federal Question Jurisdiction

Federal question jurisdiction exists if "a federal question is presented on the face of the plaintiff's properly pleaded complaint." ***Caterpillar, Inc. v. Williams***, 482 U.S. 386, 392 (1987). As such, a defendant may not rely on a federal defense to a state law claim as a basis for removal. ***Topeka Housing Authority v. Johnson***, 404 F.3d 1245, 1247 (10th

---

[3]With this reference, the Court is not characterizing Defendant Malo as an employer of the plaintiff. However, unlike the claims contained in Counts I, II, and IV, a retaliatory discharge claim is governed entirely by case law, and thus, is not restricted by a statutory definition of "employer." Thus, the Court finds it possible (as is the standard) that the plaintiff could succeed on a claim for retaliatory discharge against Defendant Malo, arguing that Malo acted as an agent of PSI based upon, *inter alia*, her supervision and personal termination of the plaintiff.

Cir. 2005). Thus, the well-pleaded complaint rule makes the plaintiff "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc.*, 482 U.S. at 392.

In admitting that the well-pleaded complaint raises only state law causes of action, the defendants argue that "the resolution of these claims undoubtedly implicates the regulatory and statutory law of the United States and requires the construction of such federal law" and that "these state law claims certainly implicate and conflict with significant federal interests." ([Doc. 19] at 11). Thus, the defendants argue that the state law implicated in this case is preempted, either by *complete* preemption or *federal interest* preemption.[4] Considering these arguments, in turn, the Court finds neither form of preemption present, and thus, no federal question jurisdiction exists.

1. ***Complete* Preemption**

Federal preemption "is ordinarily a federal defense to plaintiff's suit. As a defense, it does *not* appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to the federal court." ***Metropolitan Life Ins. v. Taylor***, 481 U.S. 58, 63 (1987) (emphasis added). Moreover, the Supreme Court has also stated that:

> A case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

---

[4]It is also important to note, here, that the presence of a federal contract does not automatically establish federal jurisdiction. See ***Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC***, 606 F.Supp.2d 114 (D.D.C. 2009). In other words, "federal question jurisdiction does not exist simply because principles of federal law may govern the interpretation and enforcement of [a federal] contract." ***Kormendi***, 606 F.Supp.2d at 117. Thus, more is required to establish federal question jurisdiction in this case than the involvement of a contract between the Coast Guard and SAC.

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983)

Nevertheless, the doctrine of *complete* preemption is an exception to the well-pleaded complaint rule. The Supreme court explained the doctrine in this way:

> One corollary of the well-pleaded complaint rule, developed in the case law, however, is that Congress may so *completely* pre-empt a particular area, that any civil complaint raising a select group of claims is necessarily federal in character.

*Taylor*, 481 U.S. at 63-64 (emphasis added).

However, very few statutes possess this "extraordinary preemptive power." *Id.* at 65. In these cases, removal is proper because Congress has manifested a clear intent to make such causes of action removable. *Id.*; **Whitman v. Raley's, Inc.**, 886 F.2d 1177, 1180 (9th Cir. 1989). As the Supreme Court stated, "[t]he touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an 'obvious' preemption defense does not, in most cases, create removal jurisdiction." *Taylor*, 481 U.S. at 66.

The Supreme Court has recognized only three such statutes: Section 301 of the Labor Management Relations Act (LMRA), Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), and Sections 85 and 86 of the National Bank Act. In 2004, the Second Circuit added a fourth statute to the list: the Copyright Act. **Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.**, 373 F.3d 296 (2d. Cir. 2004).

Nevertheless, the defendants argue that the Fair Labor Standards Act ("FLSA") and the Service Contract Act of 1965 ("SCA"), both of which are incorporated into the federal contract between the United States Coast Guard and SAC, *completely* preempt the state labor laws pursuant to which most of these claims were pleaded. (See Id. at 14-15). The

11

Court finds that neither the FLSA nor the SCA *completely* preempts the state law implicated by the Complaint.

### i. FLSA

To date, no court has included the FLSA as a statute within the complete preemption doctrine. In fact, it has been explicitly held that the FLSA is *not* a statute that completely preempts state law. *See, e.g.,* **Fitzwater v. Namco Am.**, No. C-94-20321(RMW), 1994 U.S. Dist. LEXIS 19505 (N.D. Cal. Aug. 15, 1994) (holding that FLSA does not completely preempt state law governing actions for wrongful termination in violation of public policy against retaliatory discharge); **Cuomo v. Dreamland Amusements, Inc.**, No. 08 Civ. 7100 (JGK), 2008 U.S. Dist. LEXIS 71432 (S.D. N.Y. Sept. 22, 2008) (holding that FLSA does not completely preempt state labor laws); **Mickle v. Wellman Prods. LLC**, No. 08-CV-0297-CVE-PJC, 2008 U.S. Dist. LEXIS 63697 (N.D. Okla. Aug. 20, 2008) (holding that "the FLSA does not completely preempt state law claims such that any claim seeking unpaid overtime compensation is inherently federal in character"); **Hurt v. Del Papa Distrib. Co., L.P.**, 425 F.Supp.2d 853 (S.D. Tex. 2004) (holding that FLSA does not preempt state claims based upon failure to pay overtime wages).

In 2004, Judge Copenhaver of the United States District Court for the Southern District of West Virginia elaborated upon the FLSA's preemptive effect:

> It is well established that the FLSA, in its core areas of protection – minimum wage and overtime regulation – has a relatively narrow pre-emptive effect as it does not completely preempt state laws but only preempts them to the extent that they are less generous than the FLSA.

**Hardesty v. Logan Reg'l Med. Ctr.**, No. 2:05-0437, 2006 U.S. Dist. LEXIS 22220 (S.D. W.Va. Apr. 21, 2006). In support of this observation, the Court cited the FLSA's savings

clause, 29 U.S.C. § 218(a), which permits states to enact laws providing more generous benefits than the FLSA. *Hardesty*, 2006 U.S. Dist. LEXIS 22220 at *8. As other courts have found, this "plainly shows that Congress did not intend to occupy the field of labor regulation so pervasively that any state [labor] law claim . . . is completely preempted." *Mickle*, 2008 U.S. Dist. LEXIS 63697 at *11 (citing *Wyoming v. United States*, 279 F.3d 1214, 1234 (10th Cir. 2002). Thus, given the lack of complete preemption of state wage and hour claims, the plaintiff's claims under state law are not automatically converted into federal claims unless the governing state law is less generous than the FLSA. In this regard, there has been no argument, nor does the Court find any indication, that the state labor laws of West Virginia are any less generous than the FLSA. Additionally, Judge Copenhaver found no such indication in his analysis of West Virginia labor laws. *See Hardesty*, 2006 U.S. Dist. 22220 at *8-9. Even if so, such an argument asserts "ordinary" preemption, which is a defense, and thus, insufficient to maintain federal question jurisdiction. Therefore, if the SCA does not satisfy the complete preemption doctrine, the Court must find that the plaintiff's well-pleaded complaint presents no federal question.

### ii. SCA

The SCA, which is designed to protect the rights of private contract employees doing work for the federal government, is also not a statute that completely preempts state law. Instead, this statute clearly implies that state laws conferring benefits on workers will be applicable to employees of private companies working on federal contracts. Specifically, the SCA requires every service contract entered into by the United States, in excess of a certain sum, to include a provision for fringe benefits "not otherwise required by Federal,

13

State, or local law to be provided by the contractor or subcontractor." 41 U.S.C. § 351(a)(2). This language "manifestly assumes the application of [state and] local laws benefitting workers, and adds other provisions to insure that benefits and protections for contract employees reach a certain minimum." **Diaz v. General Sec. Servs. Corp.** Thus, to the extent that the plaintiff's claim to overtime wages may be considered a claim to fringe benefits, it would seem to fall in the category of fringe benefits that are "otherwise required" by state law. Moreover, any argument of SCA preemption is flawed because the SCA fails to meet an important prerequisite of complete preemption: the SCA does not afford a private right of action. See 41 U.S.C. §§ 352(b) and 354. For complete preemption to exist, the court must find that:

> Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application of state law; rather, it replaced the state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum.

14B Charles Wright, **Federal Practice and Procedure**, §3722.1 (3d ed. 1998).

By foreclosing a private right of action, Congress has also foreclosed any successful argument of complete preemption. The failure of Congress to provide a private right of action shows that it does not intend SCA to occupy the whole field. Thus, there can be no argument of SCA preemption, whether "ordinary" or complete. Therefore, because neither the SCA or the FLSA *completely* preempt state law, the Court cannot find federal question jurisdiction based upon the *complete* preemption exception to the well-pleaded complaint rule.

### 2. Federal Interest Preemption

Next, the defendants argue that even if state law is not *completely* preempted, "this Court still has federal question jurisdiction because a 'unique federal interest' is involved and the application of state law would frustrate the objective of this federal interest." ([Doc. 19] at 15). This argument finds its legal basis in ***Boyle v. United Technologies Corp.***, 487 U.S. 500 (1988), in which the Supreme Court set forth another exception to the well-pleaded complaint rule. This exception applies when two criteria are met: (1) the case must involve "an area of uniquely federal interest" and (2) there must exist "a significant conflict . . . between an identifiable federal policy or interest and the [operation] of state law." ***Id.*** at 507 (internal quotations omitted). The party seeking to establish federal question jurisdiction on this basis bears the burden of demonstrating that both conditions exist. ***Id.*** ***Boyle*** was a military procurement case concerning the imposition of civil tort liability on a government contractor manufacturing a helicopter with an allegedly defective escape hatch, ***id.*** at 502-03, that had been manufactured according to government specifications. ***Id.*** at 509. The ***Boyle*** Court held that "the procurement of equipment by the United States is an area of uniquely federal interest," ***id.*** at 507, and that the design allegedly required by state law was "precisely contrary" to the design specified by the Government contract. ***Id.*** at 509. As a result, the ***Boyle*** Court held that federal jurisdiction existed because imposing tort liability on contractors for following government specifications in the procurement context would "directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise the price." The defendants argue that ***Boyle*** governs here. This Court disagrees.

### i. Uniquely Federal Interest

With regard to the first condition, the defendants argue that "the federal government, through the United States Coast Guard, has an extremely strong interest in performing background investigation and screening of applicants for licensure of mariners[,]" and that "[t]he performance of this function is important to the federal government as it implicates national safety and security interests." ([Doc. 19] at 15-16). The Court does not disagree with this argument; however, it fails to see how an interest in national security is implicated by the instant lawsuit.

The plaintiff seeks relief from private litigants, and a judgment in her favor will not affect the federal government's ability to perform background investigations of applicants for licensure of mariners. Indeed, unlike in *Boyle*, the plaintiff's claims will have no direct effect on the United States or its treasury. Thus, the Court finds that a unique federal interest is not implicated by the plaintiff's claims. Even if so, the Court does not perceive a "significant conflict" between federal and state law regarding the plaintiff's labor law claims.

### ii. Significant Conflict between Federal and State Law

As for the required showing of conflict between federal and state law, the defendants fail to put forth an argument. Moreover, the Court finds no conflict between federal and state law that would support preemption based upon *Boyle*. Because, as concluded above, the SCA has no preemptive effect, this conflict would have to be found between the FLSA and West Virginia labor laws. However, as also found above, state labor laws may conflict with the FLSA as long as the former are not less generous than the latter. Because

16

the defendants have failed to show this or any other type of conflict between the FLSA and West Virginia labor laws, the second condition of **Boyle** has not been satisfied. Thus, the Court cannot base federal question jurisdiction upon the **Boyle** exception to the well-pleaded complaint rule. Therefore, because neither preemption exception has been satisfied, the Court must find that federal question jurisdiction does not exist.[5]

In sum, the Circuit Court of Berkeley County possesses jurisdiction to adjudicate the claims made by the plaintiff under West Virginia law. If necessary, the Circuit Court Judge can construe and apply the FLSA and SCA defenses offered by the defendants. Unfortunately, however, without either diversity or federal question jurisdiction, any judgment rendered by this Court would be immediately vacated on appeal for lack of subject matter jurisdiction. As such, this case must be remanded to the Circuit Court of Berkeley County.

## **CONCLUSION**

For the foregoing reasons, the Court **REMANDS** this case to the Circuit Court of Berkeley County, West Virginia.

---

[5]As a third basis of preemption, the defendants argue that the plaintiff's Count IV claim under the West Virginia Wage Payment and Collection Act fails as the term "employer," as defined by that Act, does not include an entity where eighty percent of the persons employed are subject to any federal act relating to minimum wage, maximum hours, and overtime compensation. *See* W.Va. Code § 21-5C-1(e). Inasmuch as over 80% of PSI's employees are subject to the FLSA and SCA, including the plaintiff during her employment, the defendants argue the plaintiff's entitlement to wages arises, if at all, under the FLSA. However, as Judge Copenhaver once noted, "[w]hile it may very well be that [the defendants are] exempt from the applicable sections of the West Virginia Wage Payment and Collection Act, the more appropriate course of action would have been for the defendants to seek dismissal of [the plaintiff's claim] in state court." *Hardesty*, 2006 U.S. Dist. LEXIS 22220 at *10-11.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record as well as to the Circuit Court of Berkeley County, West Virginia.

**DATED:** October 13, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE